(C. D. 1658)

J. M. P. R. Trading Corp. } *v.* United States
Alltransport, Inc.

</div>

227

United States Customs Court, Second Division

(Decided November 18, 1954)

Barnes, Richardson & Colburn (Eugene F. Blauvelt of counsel); John D. Rode, associate counsel; for the plaintiffs.

Warren E. Burger, Assistant Attorney General (Richard M. Kozinn, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The suit listed above was filed by the plaintiffs herein seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of nylon fishing lines. The collector classified the merchandise as "Mfrs. of silk by similitude crins artificial imitation of cat gut 'Nylon,' " and levied duty thereon at the rate of 35 per centum ad valorem under paragraph 1211 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

Plaintiffs claim said merchandise to be properly dutiable at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as articles manufactured, in whole or in part, not specially provided for, or at the rate of 25 per centum ad valorem under paragraph 5 of said act as chemical elements, chemical salts and compounds, and com-

binations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for.

No evidence was offered, and no argument made, in support of the claim under said paragraph 5, *supra*. Therefore, in line with the holding by the Court of Customs and Patent Appeals in *United States v. Brenner*, 19 C. C. P. A. (Customs) 105, T. D. 45243, the claim under said paragraph 5 will be considered as abandoned. As stated by the court—

* * * But the Government made no objection to the testimony of use offered by appellee and, so far as the record shows, it never contended that the testimony, in order to be relevant, should have related to an earlier date. Neither in its brief nor upon oral argument has that point been made before us, and therefore, even though one of appellant's assignments of error might be construed to be broad enough to cover such a contention, it, not having been made in the court below nor in argument before us, should be deemed abandoned. *United States* v. *Sandoz Chemical Works*, 16 Ct. Cust. Appls. 392, T. D. 43119; *Hammond et al.* v. *United States*, 14 Ct. Cust. Appls. 251, T. D. 41876.

The involved paragraphs are as follows:

PAR. 1211. All manufactures, wholly or in chief value of silk, not specially provided for, 35% ad val.

PAR. 1312. Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding one inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for, 27½¢ per lb. and 35% ad val.

PAR. 1313. Whenever used in this Act the terms "rayon" and "other synthetic textile" mean the product made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, which product is solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever.

PAR. 1558. That there shall be levied, collected, and paid on the importation of * * * all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

Paragraphs 1312 and 1313 are set out above by reason of the fact that, while not abandoning the collector's classification under paragraph 1211, the defendant makes the alternative contention that the involved merchandise is dutiable under said paragraph 1312, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

At the trial, there was admitted in evidence as plaintiffs' collective exhibit 1 the interrogatories and answers thereto of two witnesses residing in France, to wit, Henri Jean Drevet and Marc Saby.

Exhibits "A" and "B" were attached as a part of the interrogatories of Mr. Drevet. Exhibit 1–A was admitted in evidence as representing the involved merchandise, except as to size, exhibit 1–A being 40/100 millimeters, whereas the involved merchandise is 16/100, 18/100, and 20/100 millimeters. Photostats of pages 921 and 922 of the Encyclopedia of Chemical Technology, edited by Dean Kirk and Professor Othmer, were marked exhibit 2 for identification. Illustrative exhibit 3 was marked in evidence as representing a braided silk line. Defendant's exhibit A was marked in evidence as a sample of a fabric made from 20/100 millimeter monofilament nylon. Defendant's exhibits B and C were admitted in evidence as representing material for automotive seat covers, woven from monofilament nylon 20/100 and 22/100 millimeters in diameter. Defendant's exhibit D was admitted in evidence as representing hair cloth for use as padding in the shoulders of suits, woven from 20/100 millimeter nylon monofilament in one direction with a fill of cotton in the other direction.

In addition to the exhibits, admitted in evidence as set out above, plaintiffs offered the testimony of three witnesses and defendant offered the testimony of one witness.

Before summarizing the evidence contained in the entire record, we shall first consider the alternative claim of the defendant under paragraph 1312, *supra*, and the evidence tending to support or disprove that contention. It is not disputed that the involved merchandise was manufactured by Societe Rhodiaceta and by it sold to Societe "La Soie," which, in turn, sold it to the plaintiffs herein. Regarding the materials used and the processes employed in producing the involved merchandise, Marc Saby testified as follows:

Q. Are you personally familiar with the materials used and the processes employed in the manufacture of the nylon monofilament sold by your company to La Soie?—A. Yes.

Q. Please describe fully the manufacturing process and name and describe the raw materials used?—A. Our firm effects the complete chemical synthesis of the raw materials necessary for the manufacture of nylon, namely, acids, amines and amino acids which are then processed into nylon polimer. The latter is in turn submitted to spinning in its molten form, in order to become a monofilament which, after being drawn out, finally acquires its permanent characteristics.

To sum it up, our firm takes care of the whole manufacturing process, starting with benzene up to the resulting monofilament which is sold to Societe "La Soie."

\* \* \* \* \* \* \*

The main steps of the processing are: transformation of the benzene into phenol; of the phenol into cyclohexanol; of the cyclohexanol into adipic acid or into amino caprolactame; transformation of the adipic acid into hexamethylene diamine.

Plaintiffs' witness, Dr. Snell, described what occurs chemically in the above process as follows:

A. Benzene is sulphonated to form benzene sulfonic acid, which is then fused with sodium hydroxide to form sodium phenolate. That, on treatment with hydrochloric acid, gives phenol. Hydrogenation of phenol gives cyclohexanol, which on dehydration forms cyclohexanone, which on oxidation forms adipic acid. At that point we might say that we take half the adipic acid and retain it for a later operation. The other half is treated with ammonia to form adipamide, which on dehydration forms adiponitrile, which on hydrogenation forms hexamethylenediamine. Hexamethylenediamine and adipic acid are the materials that go into the formation of the nylon. And on treatment under elevated temperature and pressure dehydration takes place with the formation of what is known as a polymer, giving a very large molecule of the order of molecular weight of 10,000 or more, which is nylon. The molten nylon can be treated in various ways at that point. It can be extruded in water to form a large monofilament which subsequently would be drawn to make smaller filaments. It may be forced through a spinneret to form a number of small filaments, which in some cases are subjected to high enough temperature so that they fuse together to form a monofilament. Or if the object is to make cloth, why it will be forced through the spinneret, cooled with air, and the thread would be formed at that point.

The witness was then interrogated and answered as follows:

Q. In the process of making nylon which you have just described in chemical terms, was any cellulose used as an ingredient or material in the process?—A. No, cellulose doesn't enter into the process.

Q. Was any cellulose hydrate used?—A. No.

Q. Was any compound of cellulose used?—A. No.

It is our view that the testimony of witnesses Marc Saby and Dr. Snell establishes that at no time from the beginning of the process until the involved nylon monofilament was actually produced was there present or used any cellulose, cellulose hydrate, compound of cellulose, or a mixture containing any of the foregoing. Paragraph 1313, *supra*, is a congressional definition, in clear and unambiguous language, of "rayon" and "other synthetic textile." The Congress has specifically stated that these terms "* * * mean the product made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, * * *."

The language employed by Congress in defining "rayon" and "other synthetic textile" is so clear and plain that it is not open to construction. Counsel for the defendant takes an opposite view, and, in its brief filed herein, refers us to the legislative history, insisting that "the background of Schedule 13, *supra*, is of great importance." With this argument we cannot agree. In dealing with a similar situation, in *United States* v. *The Singer Manufacturing Co.*, 37 C. C. P. A. (Customs) 104, C. A. D. 427, the Court of Customs and Patent Appeals said:

Counsel for both parties have devoted much space in their briefs to a discussion of the legislative history of the involved paragraphs of the Tariff Act of 1930. As we view those paragraphs, however, there is nothing uncertain, obscure, or

ambiguous about the language of the involved portions of paragraphs 327 or 372, *supra*, and there consequently seems to be no necessity for any recourse to legislative history. *Thorens, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261; *George B. Zaloom* v. *United States*, 21 C. C. P. A. (Customs) 518, T. D. 46972.

To the same effect is the holding in the case of *United States* v. *Kung Chen Fur Corporation*, 38 C. C. P. A. (Customs) 107, C. A. D. 447, the Court of Customs and Patent Appeals saying:

It is well settled, of course, that where ambiguity exists in the phraseology of a statute it is proper to resort to various rules, including an examination of legislative history, as an aid in construing it in order to arrive at the legislative intent. This principle is so thoroughly established that no citation of authority is deemed necessary in its support.

It is equally as well settled that extrinsic aid properly may be invoked only after ambiguity has been found to exist; or, to state it differently, it is not proper to invoke extrinsic aid and thereby create ambiguity. In the case of *Railroad Commission of Wisconsin, et al.* v. *Chicago, Burlington & Quincy Railroad Co.*, 257 U. S. 563, 588–9, the Supreme Court of the United States declared that extraneous aids "are only admissible to solve doubt and not to create it." See also *S. Nathan & Co., Inc.* v. *United States*, 37 C. C. P. A. (Customs) 99, C. A. D. 426, with citations, and *United States* v. *The Singer Manufacturing Co.*, 37 C. C. P. A. (Customs) 104, C. A. D. 427, with citations.

We indulge the further observation that matter relating to legislative history, which matter itself requires construction in order to understand it, is of no great aid to a court in construing a statute to which such matter purports to relate.

In reply to the argument of the defendant on this point, counsel for the plaintiffs in its reply brief makes the following observation, with which we agree:

In any event, the only deduction that can be drawn from the material quoted by the Government is that Congress was aware of several different methods of producing filaments, fibres, bands, strips or sheets *from* cellulose, cellulose hydrate, compounds of cellulose, or mixtures of any of them. The material also demonstrates that some of these products were known by names other than "rayon". However, there is no evidence either in the statute or in the material relied upon by the Government that Congress intended to provide for a synthetic filament which was not produced from cellulose, cellulose hydrate, or a compound of cellulose. It is, of course, completely immaterial whether or not Congress thought it was providing for all types and kinds of synthetic filaments and fibres as the First Division of the Customs Court found in the *Holeproof* case, *supra*. The point is that Congress actually, *only*, provided for filaments and fibres made artificially from cellulose or its compounds and mixtures.

On the question of whether or not the involved merchandise contained any cellulose, cellulose hydrate, or compounds of cellulose, witness Clarence D. Bell, on re-cross-examination, testified as follows:

R. X Q. Does nylon produced from benzene contain any cellulose?—A. No nylon contains any cellulose.

R. X Q. Is any cellulose used in the process when benzene is the starting material?—A. No.

R. X Q. Is any cellulose hydrate or compound of cellulose used or does it result from the process when benzene is the starting ingredient?—A. No.

Consonant with the evidence, authorities, and views set out above, we hold that the involved merchandise cannot find classification directly under the provisions of paragraph 1312, *supra*. The question, therefore, remains as to whether or not the involved monofilaments may properly be classified under said paragraph 1312, *supra*, by reason of the similitude provisions of said paragraph 1559. This question appears to have been heretofore answered by the appellate courts adversely to defendant's contention. In *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432, the Court of Customs Appeals held as follows:

> The present issue therefore is res nova, and relates to the classification for duty of rugs made of braids of dyed straw, without warp, sewed together with cotton threads. The board held that these were excluded from paragraph 368, by force of the ultimate proviso thereof, to wit, that "the terms 'grass' and 'straw' shall be understood to mean these substances in their natural state, and not the separated fibers thereof." It has been held repeatedly by this court that this proviso excludes manufactures of dyed straw from that paragraph. United States *v.* Gage (8 Ct. Cust. Appls. 306; T. D. 37584); United States *v.* International Forwarding Co. (8 id. 378; T. D. 37632); Johnson & Co., *v.* United States (10 id. 54; T. D. 38333); Cochran Co., *v.* United States (10 id. 62; T. D. 38336). And since the proviso expressly excludes these rugs from paragraph 368 as manufactures of straw, they should not be classified thereunder by similitude to manufactures of any of the other materials which are named in that paragraph. United States *v.* Neuman & Schwiers Co. (6 Ct. Cust. Appls. 228, 229; T. D. 35467); Schoenemann *v.* United States (119 Fed. 584); Fensterer & Ruhe *v.* United States (1 Ct. Cust. Appls. 93; T. D. 31110).
>
> Upon the same principle the rugs in question are excluded from assessment under paragraph 272, since that paragraph is limited by its express provisions to such as have a warp of cotton, hemp, or other vegetable substance. The present articles have no warp at all; therefore they do not respond to the enumerations contained in paragraph 272. And for the same reasons as last above set out they can not be included by similitude within a paragraph which contains express terms excluding them therefrom.

The above decision was followed and the rule therein announced reaffirmed in *Cresca Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 83, T. D. 43376, in the following language:

> * * * Early in the history of this court a rule was adopted as to the application of the doctrine of similitude, which has proved to be a safe one and has not been departed from. In *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110, Hunt, J., speaking for the court, discussed the somewhat divergent opinions of the Federal courts on this subject and finally adopted the rule laid down in *Schoenemann* v. *United States*, 119 Fed. 584, to this effect:
>
> > * * * when the statute expressly prescribes a duty for this material, when it is in a certain condition, it must be taken to preclude the application of the similitude statute to the same material not in that condition.
>
> To the same effect are *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432; *United States* v. *Neuman & Schwiers Co.*, 6 Ct. Cust. Appls. 228, T. D, 35467.

Applying the principle here, a mixture containing sugar and water is dutiable under paragraph 501 only if it tests above 50 sugar degrees. No application of the similitude statute can put it into a classification from which it is expressly excluded.

In view of what we consider the very sound pronouncements in the authorities quoted above, we are satisfied that the involved merchandise cannot find classification by similitude under paragraph 1312 of the Tariff Act of 1930, as contended by counsel for the defendant, or under any of the other paragraphs contained in schedule 13, because the provisions of said paragraph 1313 are equally applicable to each of the paragraphs embraced in said schedule 13. To arrive at this conclusion, does not require a strict construction of said paragraph 1313 by this court. As heretofore stated, the Congress, by clear and unambiguous language, has excluded all merchandise from schedule 13, except "rayon" and "other synthetic textile" "made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing." To give to said paragraph 1313 any other construction, would be nothing short of attempted judicial legislation. This we decline to do.

There is, therefore, left for consideration the question of whether the involved merchandise should be classified as being similar to a manufacture of silk under paragraph 1211, *supra*, or under paragraph 1558, *supra*, as articles manufactured, in whole or in part, not specially provided for. In determining this question, it is not necessary that we find whether it is similar in material, similar in texture, similar in quality, and similar in the use to which it may be applied to that covered by said paragraph 1211. It is sufficient if it be found to be similar in any one of the respects stated, as shown by the following from *Corporacion Argentina* v. *United States*, 29 C. C. P. A. (Customs) 288, C. A. D. 204:

(D) The similitude clause does not require that the resemblance should be in all four of the particulars mentioned—material, quality, texture, and use—a substantial similarity in one of those particulars being adequate. *United States* v. *Eckstein, supra*; *Hartmann Trunk Co.* v. *United States*, 27 C. C. P. A. (Customs) 254, 259, C. A. D. 95.

In view of the foregoing, we shall first consider the question of similarity of the use to which the involved merchandise may be applied, as compared with the use of the merchandise covered by the said paragraph 1211, *supra*. On this question, the following is shown by the record:

Harry C. Miller testified for the plaintiffs that he was a fishing tackle representative and president of a fishing line company; "The Kingfisher Bristle Company is the line company, and the other company is the Harry C. Miller Company"; that the factory, located at Rockville, Conn., manufactures fishing lines from nylon and dacron; that the sales company, located in New York City, handled mono-

filament spinning lines and braided lines; that he had been in the fishing line business for about 19 years, during which time his company has handled fishing lines of cotton, linen, nylon, and silk; that, for about 15 years, he had fished with a braided silk line and also with a monofilament line. On cross-examination, the witness was interrogated and answered as follows:

X Q. Now, isn't it a matter of opinion or preference as to which line is to be used, whether it's for spinning, trolling——A. Yes.

X Q. It's a matter of preference within the persons themselves?—A. Yes.

\* \* \* \* \* \* \*

X Q. Is there any reason why silk lines of those weights as compared with nylon lines of that weight couldn't be used for spinning?—A. They can be used.

X Q. Both can be used?—A. They can be used, yes.

Clarence D. Bell, testifying for the defendant, stated that he had been with E. I. du Pont de Nemours & Co., Inc., since 1937, in which organization he had held many responsible positions. This witness was also interrogated and answered as follows:

Q. Have you ever used silk fishing line yourself, personally?—A. Yes, sir.

Q. Have you ever used monofilament fishing line, personally?—A. Yes, sir.

Q. Of the 2, 4, and 6-pound test?—A. Yes, sir.

Q. What have you used the silk fishing line of those tests for, what type of fishing?—A. Spinning, plug casting, and trolling.

Q. What type of fishing have you used nylon monofilament line of 2, 4, and 6-pound test strength for?—A. The same types.

Q. For all practical purposes are the nylon monofilament lines of the type involved herein used for the same purpose as the type of fishing line composed of silk of the same strength test? \* \* \* —A. Yes.

Q. Is there any difference in the use, in your opinion, between the nylon monofilament fishing line of a 2, 4, or 6-pound test strength and that of silk fishing line of the same strength?—A. Well, for all practical purposes it's a matter of personal preference, and there are no major differences.

Q. Now, have you used silk fishing lines often?—A. Yes.

Q. How often? Can you give us any round figures, approximately?—A. Well, fishing is my favorite hobby, has been for the past 30 years. I have fished quite avidly. I would say I average in actual time possibly one month per year spent in fishing.

Q. And does that cover both nylon and silk fishing line under those——A. Yes.

Reference to page 931 of the Encyclopedia of Chemical Technology, *supra*, shows the following concerning the use of nylon filaments:

*Multifilament yarns* are used primarily for woven fabrics and heavy hosiery. Nylon *monofilaments* may vary in diameter from fine monofilament yarn, used in sheer stockings, to coarse, single filaments or "wire" of the order of 0.01 inch in diameter. Some typical commercial products made from nylon monofilaments include: fishing leaders, snells and lines, musical strings, racket strings, surgical sutures, wigs for toys and mannequins, and bristles for many varieties of brushes. \* \* \*

It will be seen from the foregoing that nylon monofilaments are commercially used in the production of fishing leaders, snells, and fishing lines. In *Okuda & Shibagaki* v. *United States*, 21 C. C. P. A. (Customs) 100, T. D. 46411, the Court of Customs and Patent Appeals held fishing lines made of silk to be properly dutiable as manufactures of silk, not specially provided for, under paragraph 1211 of the Tariff Act of 1922, which is in all material respects the same as paragraph 1211 of the present act; its holding being succinctly stated in the syllabus as follows:

*Held* that certain silk yarns, coated with a cellulose substance, and described by the appraiser as "fishing lines made of silk," were properly classified by the collector under the provision for *manufactures of silk* in paragraph 1211, Tariff Act of 1922, rather than under the provision for *silk threads or yarns* "advanced by any process of manufacture" in paragraph 1204.

Since fishing lines, whether made of silk, cotton, linen, or nylon, are all used for the same purpose, and since in the *Okuda* case, *supra*, the Court of Customs and Patent Appeals held fishing lines made of silk to be properly dutiable under paragraph 1211 of the Tariff Act of 1922, it would appear, in view of paragraph 1559 of the present act, that the involved nylon monofilament fishing lines, should, by reason of the similitude provision, *supra*, find classification under paragraph 1211 of the Tariff Act of 1930. In view of the fact, as established by this record, that the nylon monofilament fishing line here involved has practically replaced silk fishing lines, no reason is apparent which would justify a holding that the involved nylon monofilament fishing lines are not dutiable by similitude to the manufactures of silk provided for in said paragraph 1211, as classified by the collector. In addition, there is much evidence that nylon monofilaments are, in the production of many woven articles, used for and in the place of silk, thus supplying an added reason for holding the involved nylon monofilaments to be dutiable as manufactures of silk, not specially provided for, by reason of the similitude provisions of said paragraph 1559.

Since this record establishes that nylon monofilaments, such as those here involved, have practically supplanted silk in the production of fishing lines and also in the production of many woven articles, illustrations of the latter being in evidence as exhibits A, B, C, and D, we see no escape from the conclusion that the involved merchandise is substantially similar in use to the articles of silk for which provision is made in paragraph 1211, *supra*.

In *F. Rosenstern & Co.* v. *United States*, 171 Fed. 71, the Circuit Court of Appeals, Second Circuit, said:

There being no special provision covering this fabric, the question is: How shall it be classified? It is not within that part of section 7 which deals with nonenumerated articles manufactured of two or more materials, because both of the materials of which the fabric is composed are on the free list; the cotton under paragraph 537 and the calf hair under paragraph 571. The importers

contend that they are dutiable as a nonenumerated manufactured article under section 6. The government contends that they are dutiable by similitude to articles enumerated under paragraph 366, supra. The Board and the Circuit Court so held.

We concur with both tribunals in the conclusion that as to these goods this court is controlled by the decision of the Supreme Court in Arthur v. Fox, 108 U. S. 125, 2 Sup. Ct. 371, 27 L. Ed. 675. In that case the importations were composed of cow or calf hair, vegetable fiber, and cotton, an imitation of sealskin, and used for manufacturing hats and caps. Here the fabric is composed of calf hair and cotton, an imitation of pony fur, and used for manufacturing cloaks. In the Fox Case they were found to be substantially similar to manufactures of goats' hair and cotton, made to imitate sealskin, and used for the purposes for which sealskin is used. The goods in suit bear a like similarity to certain manufactures of calf hair and cotton, with a substantial percentage of wool or mohair noils, which are used for cloaks, but, being of a better grade and more durable, are also used for other purposes (such as car-seat coverings), which involve more wear and tear. In our opinion these additional uses of the standard with which these importations are compared do not disprove a similarity in use, and the weight of the testimony establishes a similarity in texture and quality as well. Nor does the circumstance that the goods with some wool in them are of a better grade and command a higher price prevent the application of the similitude paragraph.

In *United States* v. *Roesseler*, 137 Fed. 770, the Circuit Court of Appeals, Second Circuit, on the question of similitude, held as follows:

We, therefore, find that the ferros in question are unenumerated articles and subject to the operation of the similitude clause.

The question remains, is ferro-chrome similar to ferro-manganese? This question has been passed upon by this court in U. S. v. Dana, 99 Fed. 433, 39, C. C. A. 590, and what is there said is applicable to the present case. The counsel for appellant have taken pains to point out numerous instances wherein the two articles differ, but it must be borne in mind that the statute does not require identity; if that were necessary the statute would have no raison d' être. It is enough if there be a substantial similitude in any one of the particulars mentioned—material, quality, texture or use. Arthur v. Fox, 108 U. S. 125, 2 Sup. Ct. 371, 27 L. Ed. 675.

Ferro-chrome and ferro-manganese look alike; even the experts are unable to tell them apart, and they are similar in quality and in use, notwithstanding the fact that they produce different results and are not applied at the same stage of the process of making steel. We agree with the expert for the appellee when he says:

The steel that is made by the use of these other ferros is along the same lines as the steel produced by the use of ferro-manganese. There are differences, but the qualities imparted are of the same general family.

The decision of the Circuit Court is affirmed.

In *Pickhardt* v. *Merritt*, 132 U. S. 252, the Supreme Court of the United States said, in deciding a question of similitude:

* * * that the mere application to the dyeing of fabrics would not create the similitude, but that if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use; * * *.

In *Pittsburgh Plate Glass Co.* v. *United States*, 2 Ct. Cust. Appls. 389, T. D. 32162, the Court of Customs Appeals, in disposing of the question of similitude, used the following language:

The sole remaining question is whether or not there is a similitude of *use* between the imported article and felts made wholly or in part of wool. The uncontradicted testimony is that for many years last past there has been, and now is, imported into and manufactured in the United States and known to its commerce an article which concededly is a felt made wholly or in part of wool used solely in connection with plate glass manufacturing operations for the purpose of polishing the plate glass. Invention seems to have improved upon this process and devised what is known as the Belgium plate-glass machines. As a part of these machines as a polishing agency it has been made practical to use a less expensive polishing apparatus, to wit, the imported felts, mats, or whatever the imported articles may be styled. It appears from the uncontradicted testimony in the record that the method of using each of the articles is somewhat different, incident to the difference in the machinery employed, but they are used substantially *in* the same manner. In the one case motion of a certain direction is had, while in the other motion of a different direction is given. The result in each case is identical, so that it seems to us that the conclusion is inevitable that there is is a similitude, though not an identity in the mode of use.

In view of the similarity of the facts in the three cases last above referred to and the facts in the present case, it seems to us that those decisions are particularly apropos here and require a holding that the involved nylon monofilament fishing lines are similar in use to the manufactures of silk provided for in said paragraph 1211.

The situation with reference to the classification of the involved merchandise by similitude of use is quite similar to that which was present in *Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960, wherein the Court of Customs Appeals said:

Classification by similitude of use may well require that the same material, if manufactured into different articles, shall be classified under different paragraphs and be dutiable at different rates, depending, of course, upon the classification and dutiability of the respected enumerated articles concerning which such similitude is established. This result happened in the Rolland Frères case.

We, therefore, confine this decision to the nylon monofilament fishing lines here involved, leaving for future consideration the proper classification of dutiability of the respective enumerated articles concerning which similitude may be established.

Counsel for the plaintiffs relies upon the case of *Corporacion Argentina* v. *United States, supra,* as supporting its contention that the involved merchandise is not properly classifiable by similitude under paragraph 1211, *supra.* We think the facts in the two cases render inapplicable here the holding in the *Corporacion Argentina* case, *supra,* as shown by the following quotation therefrom:

Appellant's witness testified that the various dog foods referred to in his testimony, including the dog food here involved, are fed to dogs. However, the mere fact that the involved dog food and other dog foods containing a small percentage of grain or grain products are used as dog foods does not establish that the use of

the involved dog food is substantially similar to the use of dog foods containing grain or grain products, even if it be assumed that dog food containing a small percentage of grain or grain products (which grain or grain products the witness stated were not of importance "in the trade") were intended by the Congress to be specially provided for under the provision for mixed feeds contained in paragraph 730, *supra, Lang* v. *United States,* 4 Ct. Cust. Appls. 129, T. D. 33394. Nor is there any evidence of record that the involved dog food has substantially the same nutritive value, or that it produces substantially the same results, as any of the mixed feeds specially provided for in paragraph 730, *supra.* See *Murphy* v. *Aranson,* 96 U. S. 131; *Pickhardt* v. *Merritt,* 132 U. S. 252, 258, 259; *Lang* v. *United States, supra.* We are unable to hold, therefore, on the record presented, that the involved dog food is dutiable under paragraph 730, *supra,* by virtue of the similitude provision contained in paragraph 1559, *supra.* Accordingly, although we are not in harmony with the views expressed by the trial court, the judgment must, for the reasons hereinbefore stated, be *affirmed.*

Based upon the record before us, and following what we consider to be the leading authorities bearing upon the questions here involved, we hold the nylon monofilament fishing lines in question to be properly dutiable at 35 per centum ad valorem under paragraph 1211 of the Tariff Act of 1930, as modified, *supra,* by similitude to manufactures of silk, not specially provided for, as classified by the collector.

All claims of the plaintiffs, as well as the claim made by the defendant that the merchandise is dutiable under paragraph 1312 of said act, as modified, *supra,* are overruled. Judgment will be rendered accordingly.