Before the Second Division, June 3, 1958

**No. 62036.**—L. Tobert Co., Inc., and American Shipping Co. *v.* United States, protest 156581–K (New York).

FORD, Judge:   An importation of candlesticks with candelabra branches and candelabra (represented by exhibit 1) was classified by the collector of customs as household utensils, plated with silver, and duty was imposed thereon at the rate of 50 per centum ad valorem in paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339).

Plaintiffs claim that the merchandise should be classified in paragraph 339, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and dutiable at 25 per centum ad valorem or, alternatively, that the merchandise is dutiable at the same rate, but pursuant to the provision in paragraph 397 of said act, as modified, *supra*, as articles, not specially provided for, plated with silver on nickel silver or copper, but not in chief value of silver.

THE STATUTES

PARAGRAPH 339 of the Tariff Act of 1930:

Par. 339.   Table, household, * * * utensils, * * * not specially provided for: * * * plated with silver, 50 per centum ad valorem; * * *.

Paragraph 339, as modified by T. D. 51802:

[Par. 339.] Table, household, * * * utensils, * * * not specially provided for (except * * * illuminating articles * * *), whether or not containing electrical heating elements as constituent parts thereof:

\*      \*      \*      \*      \*      \*      \*

Plated with silver but not plated in any part with platinum:
On nickel silver or copper...................... 25% ad val.

Paragraph 397, as modified by T. D. 51802:

[Par. 397.] Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*

Plated with silver on nickel silver or copper, but not in chief value of silver...................................... 25% ad val.

It appears from the record that the merchandise herein is substantially like that which formed the subject of our decision in *L. Tobert Co., Inc., and American Shipping Co.* v. *United States*, 28 Cust. Ct. 456, Abstract 56581, affirmed on appeal, one judge dissenting, *id.* v. *id.*, 41 C. C. P. A. (Customs) 161, C. A. D. 544, and the record of that case is incorporated herein.

In the earlier case, the merchandise had been classified by the collector, as in the instant case, as household utensils, silver-plated, in said paragraph 339, and the plaintiffs relied upon classification in the same paragraph, as modified, providing for:

Table, household, * * * utensils, * * * not specially provided for (except * * * illuminating articles * * *), * * *:
Plated with silver but not plated in any part with platinum:
On nickel silver or copper........................ 25% ad val.

The plaintiffs were there contending primarily that the items were not illuminating articles, but we held that the importer had not met its burden of proof on that score, and the court of appeals affirmed.

In the present case, considerable new evidence has been introduced by the plaintiffs when hearings were held in New York, N. Y.; Chicago, Ill.; Houston, Tex.; and San Francisco, Calif. This evidence was not rebutted by the defendant.

Plaintiffs rely upon this new evidence to establish that the subject merchandise is excluded from the terms in paragraph 339, for the reason that its use is primarily ornamental, and not for illuminating purposes, and, inasmuch as the provision for household utensils is limited to certain articles which are chiefly utilitarian, the merchandise in controversy is relegated to paragraph 397, *supra*.

It will be recalled that, in the original case, two witnesses testified on behalf of the plaintiffs, and one for the defendant. In the present case, plaintiffs have introduced the testimony of six additional witnesses and the defendant none.

The qualifications of the eight witnesses called by the plaintiffs in the combined record are here briefly stated:

Harry Tobert (a witness in the first case), a member of the plaintiff company for 28 years, testified to his familiarity with the imported merchandise both as an importer and as a dealer; that he sold such merchandise to retail stores and to interior decorators; and had seen the subject merchandise in use on various occasions during the past 10 years, both with and without candles, for decorative purposes.

Edward Prill (also a witness in the first case) had been associated with the Prill Silver Co., importer of silver and silverware for 45 years; had been an importer and dealer in candelabra, such as that represented by exhibit 1, for upward of 26 years; that such articles were sold "to all decorators, stores, and so on"; that he had "seen them in many homes hundreds of times"; that "you might see some in a hotel or somewhere or in a restaurant, just for show, where they want

to put a little air on"; that their "purpose is to decorate the table or decorate the room"; that "they give a certain air to the room or to the place."

The following witnesses testified in the present case, but not in the original case:

George Wylie has been manager of the decorating department of Gimbel Brothers, New York, for 9 years; prior to that time, he was in the interior decorating business for himself for about 8 years, having formerly been a decorator and buyer for John Wanamaker in Philadelphia and with B. Altman of New York. For 5 years, in the discharge of his duties, he traveled through Massachusetts, Connecticut, New York, Pennsylvania, Virginia, and Florida. Since 1919, he had been in about 25 homes per year in the states mentioned. He had been familiar with the subject merchandise all his life; had seen such merchandise in about 50 per centum of the homes he visited as an interior decorator. It was this witness' testimony that, while prior to 1928 such articles were used for illuminating the dining table, since that time their use had been more particularly for ornamentation and display, with or without lighted candles, and, if used for partial illumination, they would be supplemented with electric sconces.

Harold E. Cuttle, Jr., vice president of Grow & Cuttle, Inc., in Chicago, importer and distributor of decorative accessories, and having sold merchandise such as exhibit 1 for a period of about 10 years throughout the United States, had seen such merchandise in use in the homes of friends who are interior decorators in Georgia, Florida, and Chicago, and in decorators' showrooms in Georgia, Tennessee, Florida, Chicago, Alabama, New York, California, Washington, Oregon, Texas, Oklahoma, Nebraska, and Kansas. He stated that the articles were used primarily for decoration, either on dining-room tables or on sideboards; that, when the article was equipped with candles and lit, on formal occasions, it was as an accessory for decorative purposes, that is an "effect-lighting," although electrical lighting would also be employed. Clearly, in his opinion, the merchandise in controversy would be used primarily for decorative purposes.

Jack Greene had been in the diamond, jewelry, and silverware business for the past 6 years and, prior to that, manager of Shaw's Jewelry Store in Houston, Tex. He stated that he had been handling silverware since 1920, first in New York City, then in Baltimore, Md.; that, since 1920, he had seen merchandise like exhibit 1 in homes located in the cities above mentioned; that he had seen them used on sideboards and mantlepieces with tapers in them, made of glass, metal, or plastic, simply for decorative purposes.

Wylie A. Bullard, manager of Lessinger's Jewelry Store in Houston, Tex., had been in the business of selling silverware, jewelry, watches, china, and crystal from 1919 to 1948 in St. Paul, Minn., later spending a short time in Lubbock, Tex., and, since 1949, he has remained in Houston, Tex. He also testified that he had seen articles like exhibit 1 used in homes, on dinner tables and sideboards for ornamental purposes, and that the primary function of such merchandise is decorative.

Richard B. Gump, president of Gump, Inc., of San Francisco, Calif., a member of his company for 30 years, dealing in a variety of articles, both decorative and utilitarian for use in the home, testified that his company has been in the business of interior decorating for 40 years; that, in the conduct of his business, he had had occasion to visit in many homes from Texas to Seattle to San Francisco and Los Angeles. The witness was then interrogated and answered as follows:

Q. In what parts of this country have you had experience in home decorating?—A. Well, I won't say I personally have, but our store, naturally, being president, I have been closely associated with decorating in every part of this country.

Q. Would that be in every State, practically?—A. No, not every State, no, but a large part of the country, from even Texas to Seattle, to Los Angeles, to San Francisco.

Q. And have you personally been over a great part of the country in connection with your duties?—A. With my duties, and also as a lecturer, because I am also a professional lecturer. I have covered a great deal of this country, and I have been to a great many homes, lecturing in front of august bodies and giving them advice on how to use things in their home and how to enjoy, get the proper value out of things.

Q. And that experience has been throughout the country?—A. Well, yes, about almost every State, with probably 4 or 5 exceptions.

* * * * * * *

Q. Will you state how they have been used in these times that you have seen them used?—A. For decorative effect, with or without candles.

* * * * * * *

Q. And you stated they are used without candles, they are not lit at such time, I assume.—A. No; I said usually on the dining table, when they are used on the dining table they are lit.

Mr. WEIL: That is right.

A. But supplementary to electric lighting.

* * * * * * *

Q. Has this been true during all the 30 years of your experience, Mr. Gump?—A. Oh, yes, because in all that experience we have had electric lights.

Lilian Kersnar was head decorator for the Emporium in San Francisco, the largest department store in that city; during the past 4 years, she managed the decorating studio, directing the interior decoration of offices as well as homes; prior to that time, she, as a housewife, devoted her spare time to decorative work as an avocation; she had seen merchandise like exhibit 1 in her own home, as well as in homes in Washington, New York, Tucson, Phoenix, and Texas. In the performance of her duties as an interior decorator, she had prescribed the use of such merchandise many times, as secondary lighting to other light provided electrically. Her testimony shows clearly that, from her point of view, the merchandise in controversy would be recognized and used primarily for its ornamental value.

The testimony of the witnesses above described is contradicted only by defendant's sole witness, Elizabeth Gallagher Ormsby who, at the time of her testimony, was manager of the decorating department of R. H. Macy in New York City and who had been for 13 years employed by various stores as an interior decorator. Of her testimony the appellate court, in the *Tobert* appeal, above referred to, made the following observation "* * * the witness testifying on behalf of the Government was of the opinion that the imported article served chiefly in the capacity of utilitarian illuminating articles furnishing light for useful and practical purposes."

Further, the court stated: "Testimony ranging from the dogmatic to the confused was adduced bearing on the extent of illumination provided by lighted candelabras, as well as testimony relating to the question of whether lighted candelabras were ever used as the sole source of illumination."

The testimony of plaintiffs' witnesses relates to the use of merchandise like that in controversy for decorative and ornamental purposes throughout a large part of the United States.

We are satisfied that, by a clear preponderance of the evidence, it is established that the primary use of the merchandise, such as exhibit 1, in homes, on dinner tables, or sideboards, whether or not lighted, was one of decoration or ornamentation to give an atmosphere of gracious living and, at the same time, to heighten the decorative effect, their use for illumination being incidental.

It is worthy of note that the appellate court, in the *Tobert* case, *supra*, made this significant remark:

* * * Candelabra and candlesticks are of quite common use. They are, as such, used in many varied ways, well known by most everyone. It is tempting therefore, for us to apply our judicial knowledge on the subject and once and for all determine the classification of such articles for tariff purposes in the future.

We recognize, however, that despite what may be the experience and knowledge of one judge or another, such may not be in line with the chief use as determined via proof, which seems to us must be available in quantity and quality sufficient to assist the court in future litigation. * * *

That proof has been supplied here.

The judge who wrote a dissenting opinion in that case was even more emphatic. We quote:

> * * * I do not require the testimony of witnesses to enable me to determine as a matter of fact that the candlesticks or candelabra involved in this controversy are not *per se* illuminating articles, and there is nothing in this record which seems to me to justify the conclusion that they are something in law that they are not in fact. In my opinion, the articles are themselves witnesses quite sufficient, without more, to overcome the *prima facie* presumption of correctness which attaches to the collector's classification.

From the record before us, we find that the chief use of the subject merchandise in the United States is for decoration or ornamentation. It is, therefore, excluded from the terms of paragraph 339, for the reason that the provision for household utensils in that paragraph is confined to such articles as are chiefly used for utilitarian purposes. *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T. D. 43297.

Since the merchandise in controversy is excluded from paragraph 339, *supra*, it is relegated to paragraph 397, *supra*, and classifiable thereunder as articles, not specially provided for, plated with silver on nickel silver or copper, not in chief value of silver, and dutiable at the rate of 25 per centum ad valorem, as alleged by the plaintiffs.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.