(C.D. 2611)

IGNAZ STRAUSS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 18, 1966)

*John D. Rode* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan* and *Arthur H. Steinberg*, trial attorneys), for the defendant.

Before Rao and Ford, Judges

Ford, Judge: Two importations of candlesticks and candelabra, represented by photographs marked illustrative exhibits 1, 4, and 6, and by samples marked exhibits 2, 3, and 5, were classified by the collector of customs under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which provides for:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

    Composed wholly or in chief value of \* \* \* brass \* \* \*:

\* \* \* \* \* \* \*

    Other, composed wholly or in chief value of \* \* \* brass \* \* \*_____ 19% ad val.

The collector also imposed a copper tax, pursuant to section 4541(2) of the Internal Revenue Code, as modified by the sixth protocol, *supra*, which is not controverted.

By timely protests, plaintiff claims the imported goods dutiable under paragraph 339 of said modified act, which provides for:

Table, household, kitchen, and hospital utensils * * * not specially provided for * * *:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

    Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

        Brass_____ 12½% ad val.

There is no contention that the candlesticks and candelabra are other than composed wholly or in chief value of brass. Therefore, the issue to be decided is whether those articles, represented by exhibits 1 to 6, are articles or wares under paragraph 397, *supra*, as classified, or are household utensils under paragraph 339, *supra*, as claimed.

Plaintiff offered the testimony of two witnesses as well as the exhibits above referred to. Defendant's counsel moved to incorporate the record in *L. Tobert Co., Inc., and American Shipping Co.* v. *United States*, protest 156581–K, reported in 40 Cust. Ct. 586, Abstract 62036 (the case of *Id.* v. *Id.*, 28 Cust. Ct. 456, Abstract 56581, affirmed in 41 CCPA 161, C.A.D. 544, one judge dissenting, had been incorporated therein). After opposition thereto by plaintiff's counsel, the record was admitted after said counsel stated:

I will withdraw my objection to the incorporation of the record so that the case can be submitted on the testimony of the two witnesses called this morning and the record in the *Tobert* case, but I certainly reserve my right to object to the testimony as to its relevance or materiality.

Plaintiff's witness, Maurice Lemkin, testified that he has been with the plaintiff corporation for 35 years and is its sales manager; that it is an importer of chinaware, brassware, and other articles of that type; and that he is familiar with the foreign invoices of merchandise it imports. He identified the articles under protest, which are described on the invoices, as follows:

As to protest 60/11899

Item "W 1493 Candlestick, 3½" Plain" is represented by photograph, marked illustrative exhibit 1.

Item "C 6332 Candlestick, 4½" Plain" is represented by sample, marked exhibit 2. The witness stated it is "a Cape Cod candlestick."

Item "C 6867 Candlestick, 8½" Plain" is represented by sample, marked exhibit 3.

Item "C 6771 Candlestick, 7½″ Plain" is represented by photograph marked illustrative exhibit 4.

As to protest 61/24634

Item "W 1493 Candlestick, 3½″ Plain" is the same as illustrative exhibit 1.

Item "W 1540 Candlestick, 3¾‴" is the same as illustrative exhibit 1, but slightly larger in size.

Item "C 6705 5 Arm Candelabra, 10″ Plain" is represented by sample, marked exhibit 5.

Item "C 8549 5 Arm Candelabra, 14″ Plain" is the same as exhibit 5, but larger.

Item "C 6771 Candlestick, 7½″ Plain" is the same as illustrative exhibit 4.

Item "C 6772 7 Arm Candelabra, 11½″ Plain" is represented by photograph, marked illustrative exhibit 6.

Mr. Lemkin also testified that he dealt with merchandise like exhibits 1 to 6 for 35 years, not buying them, but importing, distributing, and selling them to the wholesale trade, department stores, and rental stores throughout the United States. He said that he observed their use many times "all over the United States," prior to and during his entire business career, and that he used like items in his home; that he saw them mostly and principally in homes, their use being the same "all over the country"; that, in use, they hold candles, and he has not seen them without candles; that he saw exhibit 2 in many homes mostly in New England and the eastern part of the United States, sometimes used with a candle for lighting purposes when going from room to room. He stated that this exhibit has a handle to it and is called a Cape Cod candlestick; that he has never seen exhibit 2 used for decorative purposes. He testified that he has seen exhibit 3 with a candle used mostly in homes of Jewish persons, because of its height and type, on a Friday night when it is lit for holy day purposes or on the eve of a Jewish holiday, and that the candle is left to burn until it burns out; that, after use for holiday or Sabbath, it is put away into a closet until used again; that he has not seen "this typical candlestick" left around for ornamental purposes.

Mr. Lemkin further testified that exhibit 5 is used for exactly the same purpose "where a housewife in an orthodox house would use more than one or two candles. They usually light two candles but there are some householders that use five and seven candles." (Exhibit 5 uses five candles and exhibit 6 uses seven candles.) He stated that he never saw those exhibits used without candles, as they are put away after use for the holiday or Sabbath. He testified that all of the exhibits 1 to 6 are brass and are plain; that he has seen silver

ornamental candelabra, and candlesticks of pewter and other metals used for ornamental purposes and that their use was different than the use of exhibits 1 to 6.

Under cross-examination, Mr. Lemkin testified that the ornamental candlesticks he saw were made of silver, pewter, or brass that was ornamented with fancy lacework; that if a candelabra similar to exhibit 5 were made of fine silver, with a smooth finish, without lacework, it would be considered ornamental "Because a candlestick of that sort, after it's used, would still be left around to be ornamental on your table or buffet." In the opinion of the witness, a brass one, without lacework or other designs, is not ornamental; that ornamentation depends upon the inscription or lacework or designs which are added to the candlestick or candelabra. He also said that, in the course of his travels, he saw articles like exhibit 2 "around" on either night tables in bedrooms, or mantelpieces, or some other places with and without a candle in them. He stated that he seldom saw candlesticks or candelabra in the home of friends other than those of Jewish extraction, although he is not, by this, implying that exhibits 3 and 5 are limited to Jewish homes, as "* * * I have only said where I have seen them."

On questioning by the court, Mr. Lemkin testified that he would not consider exhibit 5 to be constructed in an ornamental fashion simply because it is made to hold five candles, as they have to bring these branches out in order to hold more than one candle. He stated that exhibit 6 is not ornamental, though it is made to hold seven candles and has one more arm than exhibit 5. He stated that when he saw merchandise like exhibits 1 to 6 in use, they had candles in them, but that he has not seen them applied without candles for any purpose.

Plaintiff's witness, Michael Donofrio, testified that he has been employed by B. Altman & Co. of New York City, for 18 years and occupies the position of buyer in the gift shop, silver shop, and Christmas shop; that he has been familiar with merchandise of the character of exhibits 1 to 6 for 18 years; that his firm buys and sells that type of merchandise, some being identical while others are quite similar. He stated that he saw items like those exhibits in many places in the United States and he has used like items; that he uses exhibit 2 as an emergency light in his New Hampshire cottage in case of power failure due to storms, or "one thing or another"; that it is kept in the cottage with a candle "to be used for lighting purposes"; and that he has seen others using it lit. He testified that he saw his Jewish friends use exhibit 5, referred to as a "minorah" [menorah]*, and that

---

*Webster's Seventh New Collegiate Dictionary (1963), page 529, shows the following:
me-no-rah [Heb. menorah candlestick] :
    a candelabrum used in Jewish worship.

he is most familiar with the seven-branch (exhibit 6) "which is usually displayed in a window or on a dining table visible with candles burning in it." He stated that candlesticks, such as exhibits 1 to 6, are used to hold candles and that when he sells such merchandise, which he classed as rather inexpensive, in his experience, he is asked for candles, or at least an assurance that an American-made candle can be fitted into them; that if they have no such candle, a customer, in most cases, "will not buy them unless we furnish a special size candle for them." He testified that he observed exhibits 1 to 6 used principally in the household or homes.

Under cross-examination, Mr. Donofrio testified that exhibits 1 to 6 are sold in his gift department. He also stated that he sells brass candlesticks and candelabra, which he considers ornamental and distinguishes them from exhibits 1 to 6 because of their size, weight, and the amount of decoration on them. He testified that exhibits 2 and 3, in silver, are more demanded as decorative items than as useful pieces, as they become a problem for daily use, because of the necessity for cleaning them. He said his guess as to the use of brass pieces was based upon the request for candles to fit them and the purchaser's desire for assurance that candles can be purchased for them or were in stock to fit them; that, based upon that experience, as well as seeing his friends and neighbors of the Jewish faith using the brass type in New England, he stated they are more utilitarian than decorative, and also because the price is low and would not be given as a gift.

Mr. Donofrio stated he had been in the homes of Jewish persons at dinner parties and other occasions, not necessarily on Friday night, where candlesticks are lighted not as an "effect lighting." At many "buffets" eating is by candlelight, the main source of light coming from burning candles, though ample electricity which is kept out, is available. He stated that he has seen candles burning in the windows, and that a 4- or 5-inch candle when used in exhibit 3 would evaporate off into the atmosphere if it were a "dripless" candle, while non-dripless candles "would just overflow over the sides." He testified that, in his New Hampshire cottage, where he used exhibit 2, there is electricity and, if it went out in an emergency, he would use normal flashlights, candles, candleholders, or sconces. He said he had a few articles such as exhibit 2 in his pantry, which are not kept polished, some being in brass, iron, or ceramic; that he has seen articles similar to exhibit 2 in his friends' houses on a night table, or mantelpiece, or end table, with candles, without candles, and lighted or unlighted.

On being questioned by the court, Mr. Donofrio testified that he sees merchandise like exhibits 1 to 6 in his store on display almost daily, but it does not there convey the actual use to an observer; that his other experience with such articles was to observe them in use in

his trips all over the country, throughout the United States and in the world; that he travels extensively for Altman's in Europe; that exhibit 2 is designed primarily to be carried in the hand; that most of the candlesticks with which he deals are equipped and constructed to carry domestically made candles in the standard sizes; that he sells oversized, ornamented, and inlaid candlesticks that are designed to be utilized in the home without candles, and others that are equipped to be ornamented with a prismatic effect with crystal drops. The witness agreed that a millionaire having a dinner party would not likely use exhibit 5, but that a man making $50 a week might use it at a dinner party when his wife might consider it to be ornamental; that "this is mostly classified in my trade * * * as a minorah" [menorah]. He also testified that he has very rarely seen that particular exhibit 5 "or the one with a seven branch [exhibit 6] bought other than by people of the Jewish faith for the specific purpose of using it as a religious article." He stated, in reference to exhibits 5 and 6, that, in his department, purchasers ask for a "minorah" [menorah]; that he has not seen their candelabra used as a mantel ornamentation, or on a table, but has driven by in the evening on holidays and saw the lighted candles in this article, through the window, used on a religious occasion, in the household.

A careful scrutiny of the evidence discloses no specific testimony as to the use of exhibits 1 and 4. Those exhibits are included in the general, broad sweeping questions and answers relating to "exhibits 1 to 6." There is insufficient evidence concerning exhibits 1 and 4 to warrant a conclusion that the importer has established, as to them, that the presumptively correct classification is erroneous, and that importer has established its claim in respect thereto. These are two burdens of a protestant. *Bob Stone Cordage Co. et al.* v. *United States*, 51 CCPA 60, 65, C.A.D. 838, citing and quoting from *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, 91, C.A.D. 735.

Exhibit 2 is shown by the record to be used for illumination purposes by candlelight, in the event of a storm or other cause, when usual lighting facilities are extinguished. Such may be the use of exhibit 2 in the recent so-called "blackout" in the northeastern seaboard states. In that event, exhibit 2 is temporarily used to hold a lit candle to furnish illumination and thus is an illuminating article. After such use, the record shows it is put away out of sight, although it may also be placed on a night table or mantelpiece, with an unlit candle or with a lit candle. The collector's classification does not indicate that exhibit 2 is an illuminating article. It was classified under paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra* (T.D. 54108), which provides for "Articles * * *

not specially provided for, * * * Other, composed wholly or in chief value of * * * brass" at 19 per centum ad valorem. That provision is similar to the provision in the earlier modification in T.D. 51802, which there provided for duty at 22½ per centum ad valorem.

In *McGlynn Hays Industries, Inc.* v. *United States*, 39 Cust. Ct. 266, C.D. 1940, this court held that certain thread illuminators, which possessed light-generating power activated by an electrical current and used solely to throw a concentrated beam of light down the length of a loom frame as an aid to the operator in inspecting up to 200 threads being simultaneously spun, were illuminating fixtures, subject to duty under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides for "Articles * * * not specially provided for, * * * Composed wholly or in chief value of * * * brass * * * Other * * *" at 22½ per centum ad valorem. Importer claimed the merchandise to be classifiable as articles having as an essential feature an electrical element or device in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, at 13¾ per centum ad valorem, or, alternatively, as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy under said paragraph 353, as modified by T.D. 51802, at 15 per centum ad valorem.

In the above-cited *McGlynn*, etc., case, this court stated that the appellate court, in *United States* v. *Minami & Co., Inc.*, 29 CCPA 169, C.A.D. 188, involving Christmas wreathes made of wood chip and having an electrical cord with metal socket attached, and in *National Carloading Corp.* v. *United States*, 44 CCPA 77, C.A.D. 640, involving electric-light sockets, reviewed the legislative history of paragraph 353. This court then stated:

The reasoning of the court in those cases clearly indicates that Congress intended to relegate illuminating articles, regardless of their electrical equipment, to the basket provision of the metal schedule, paragraph 397.

We consider the reasoning of the appellate court in the last two cited cases, concerning the legislative history, to be equally indicative of congressional intention to relegate articles such as presently before the court, represented by exhibits 1, 2, and 4 to the metal schedule, paragraph 397, as classified, rather than to paragraph 339, as claimed.

Exhibits 3, 5, and 6 are established on the record as made to be used with lit candles for religious purposes, primarily by Jewish persons throughout the United States, on Friday nights or Jewish holy days. Their function is not as illuminants, but for the purpose of celebrating the Sabbath or other Jewish holy days. The candles are

permitted to burn until they are burned out, after which they are put away out of sight until again used for the same purpose. The use of the lit candle is part and parcel of the celebration for religious purposes on a Jewish holy day. They are concededly composed wholly of brass. Their use with a lit candle, which gives off light, is not the same as the use of exhibit 2 herein, or the thread illuminators, above referred to. The light feature, in respect to exhibits 3, 5, and 6, is merely incidental to their religious function in the household. They are claimed to be household utensils under paragraph 339, as modified, *supra.*

It will be recalled that the *Tobert* case, *supra*, protest 156581–K, reported in Abstract 62036, was incorporated in the case at bar. In that case, this court stated that it appeared from the record that the merchandise therein (represented by exhibit 1) was substantially like that which formed the subject of its decision in the earlier *Tobert* case, *supra*, reported in Abstract 56581, affirmed in C.A.D. 544, *supra*, which was incorporated therein. The merchandise there under consideration, as stated in the appellate court's decision, consisted of "An importation of candlesticks with candelabra branches and candelabra, silver plated on either copper or nickel silver." It is immediately discernible from that statement, as it is from a review of the evidence, as stated in the *Tobert* decisions, and by a visual examination of said exhibit 1, which we have made, that the merchandise there under consideration is not similar in material, size, workmanship, or shape to the merchandise in the case at bar, represented by exhibits 3, 5, and 6, which are "composed wholly or in chief value of brass," as assessed and as claimed.

In *Gemsco, Inc.* v. *United States*, 48 Cust. Ct. 377, Abstract 66583, certain military insignia, required by governmental regulations to be worn by personnel in the Navy; Civil Engineer Corps of the Navy; United States Public Health Service; Dental Corps, United States Navy; Air Force; Coast Guard; and chaplains, United States Navy, were held classifiable under paragraph 385 of the Tariff Act of 1930, as modified by T.D. 51802, as articles made wholly or in chief value of bullions, rather than as "ornaments" under paragraph 1529(a) of said act, as modified by T.D. 52739. This court referred in support to *N. S. Meyer, Inc.* v. *United States*, 6 Cust. Ct. 191, C.D. 459; *United States* v. *Gaunt & Sons et al.*, 15 Ct. Cust. Appls. 94, T.D. 42183; *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 CCPA 149, T.D. 42473; and *United States* v. *Blefeld & Goodfriend*, 24 CCPA 213, T.D. 48658. The insignia were not worn for personal comfort, convenience, or adornment. Nor are exhibits 3, 5, and 6 here used for any of the above-named purposes, but are used for religious purposes in the household, for holy day occasions. It is as much a "must" for religious purposes to use exhibits 3, 5, and 6, here, as it was a "must" for the personnel to wear the insignia in the *Gemsco, Inc.*, case, *supra.*

By the same token, while the brass articles were primarily used with lit candles on Friday nights or on holy day occasions by persons of the Jewish faith, their use was for religious purposes, and not for either decoration, ornamentation, or for illumination purposes. The use, in our opinion, is utilitarian.

Giving full force and weight to the record with respect to exhibits 3, 5, and 6 here in evidence, we conclude that it establishes a *prima facie* case overcoming the presumption of correctness of the collector's classification. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, 221, T.D. 45995; *United States* v. *Bruce Duncan Co., Inc., a/c Kasuga Sales, Ltd., National Silver Company*, 50 CCPA 43, 46, C.A.D. 817.

On the record and for the reasons stated herein, we hold that the imported articles, represented by exhibits 3, 5, and 6, are household utensils. As such, they are subject to duty under paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, at 12½ per centum ad valorem, as therein provided for. The claim in the protests is sustained as to such articles.

For the reasons stated herein, we hold that the record does not show that the articles represented by exhibits 1, 2, and 4, have been erroneously classified or that the record supports the claimed classification. Accordingly, the claim in the protests as to such articles must be overruled.

The protest claim in 61/24634, in reference to *lanterns*, is deemed abandoned, and is dismissed. *J. M. P. R. Trading Corp., Alltransport, Inc.* v. *United States*, 33 Cust. Ct. 226, C.D. 1658, affirmed in *Id.* v. *Id.*, 43 CCPA 1, C.A.D. 600.

The imported merchandise is subject to the copper tax, as assessed by the collector of customs pursuant to section 4541(2) of the Internal Revenue Code, as modified by the sixth protocol, *supra*, at the rate of 1.275 cents per pound.

Judgment will be rendered accordingly.