UNITED STATES v. DANA et al.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

No. 69.

1. CUSTOMS DUTIES—CLASSIFICATION—SIMILARITY OF USE.

To constitute similarity in use, within the meaning of the similitude clause of the tariff act of 1894 (section 4), which will require a nonenumerated article to be classified with one enumerated, the uses of the two need not be identical or interchangeable.

2. SAME—FERROCHROME.

Ferrochrome, which is a product obtained by smelting chromic ore, is dutiable under paragraph 110 of the tariff act of 1894, by reason of its similarity in use to ferromanganese, covered by such paragraph, and not under section 3, as a manufactured article not enumerated or provided for, both articles being used in the manufacture of steel, to produce a tough, hard quality, the former when the iron ore contains an excess of phosphorus, and the latter when it shows an excess of sulphur.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Chas. D. Baker, for the United States.

Wm. Wickham Smith, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This appeal involves the dutiable classification, under the tariff act of 1894, of "ferrochrome," a product obtained by smelting chromic ore, and used in the manufacture of steel.

The importations were classified by the collector under section 3 of the act, as "manufactured articles not enumerated or provided for," and subjected to duty at 20 per centum ad valorem. Upon an appeal by the importers, the board of general appraisers affirmed the action of the collector, and the circuit court reversed that decision. 91 Fed. 522. The circuit court held that the articles should have been classified under paragraph 110, which imposes duty upon ferromanganese at the rate of four dollars per ton; the ground of the decision being that ferrochrome and ferromanganese are similar articles in the uses to which they are applied, and, as the former was unenumerated, it was, by force of section 4, by similitude, subject to the duty imposed on ferromanganese. As the importers have not appealed from the

decision of the circuit. court, and as it is not disputed that ferro-chrome is a manufactured article, not specifically enumerated or pro-vided for in the act, the single question is whether there is a simili-tude between the articles ferrochrome and ferromanganese, within the meaning of section 4, which prescribes that any nonenumerated article "which is similar either in material, quality or texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned."

Upon the appeal from the decision of the board of general apprais-ers no further evidence was taken, and the case was heard upon the evidence which was adduced before the board. There is no conflict in that evidence, but the court below differed from the board in the conclusion to be deduced from the undisputed facts.

It appears that both articles are used in the process of producing extra tough, hard metal, their distinct use being as an admixture with the iron ore which is to be converted into steel. In one sense, they are used interchangeably; that is, both articles are used side by side, the one being selected when the iron ore has an excess of phos-phorus, and the other when it has an excess of sulphur. According to the testimony, when the analysis of the base shows an excess of phosphorus the ferrochrome is used, because it neutralizes the action of the phosphorus; and when it shows an excess of sulphur the manganese is used, because it eliminates the sulphur. The testimony suggests, also, that the two articles are sometimes used inter-changeably in another sense. They come in different grades, ranging from 20 to 80 per cent. in the quantity of pure chromium or manganese contained in the article. The testimony suggests that a low grade of ferrochrome is sometimes used as a substitute for ferromanganese. The board of general appraisers apparently did not so understand the testimony, and we are not able to satisfy ourselves that it should be so understood. The question, then, is, no similarity in other re-spects being shown, whether the similarity in use, notwithstanding the differences in the mode of use of the two articles, establishes their similarity in the sense of action.

The terms of the section are satisfied if the use to which the two articles are adapted is similar, although in other particulars there may be no similarity between them. The use referred to is the "em-ployment or effect in producing results." Murphy v. Arnson, 96 U. S. 133, 24 L. Ed. 773. In Pickhardt v. Merritt, 132 U. S. 258, 10 Sup. Ct. 80, 33 L. Ed. 353, where one of the questions was as to the similitude between certain imported dyes and "aniline dyes," the court instructed the jury that the mere application of the two articles "to the dyeing of fabrics does not create the similitude, but, if there was a similitude in the mode of use, a similitude in the same kind of dyeing, producing the same colors in substantially the same way, so as to take the place of aniline dyes in use, there would be a similitude in use." The supreme court approved that instruction. In the present case the two articles are used in the treatment of iron ore to produce a steel of peculiar properties. It would seem that similitude between two

articles is established when the predominant use of both is to effect in a particular art or process the same concrete result. However that may be, there is in the present case a closer criterion of similarity. The use of both is to effect in the smelting of iron ore the elimination of objectionable properties, and in accomplishing this result one is the equivalent of the other. Moreover, the subordinate result effected by each resembles that of the other. The result accomplished by the ferrochrome in counteracting the phosphorus in the ore is analogous to that of the ferromanganese in counteracting the sulphur. The uses of the two articles, though not identical, are affiliated. The section does not require identity, but is satisfied by similarity in uses.

We conclude that similitude, within the meaning of the section, is established by the evidence, and that the decision of the circuit court was correct.