## UNITED STATES v. ROESSELER & HASSLACHER CHEMICAL CO.

(Circuit Court of Appeals, Second Circuit. March 1, 1905.)

No. 126.

1. CUSTOMS DUTIES — CLASSIFICATION—FERRO-CHROME—FERRO-MOLYBDENUM—FERRO-TUNGSTEN—FERRO-VANADIUM—FERRO-MANGANESE.

Ferro-chrome, ferro-molybdenum, ferro-tungsten, and ferro-vanadium, which, like ferro-manganese, are employed as alloys in making steel, which so resemble ferro-manganese that even experts are unable to tell them apart, and which are similar in quality and use to ferro-manganese, though they produce different results, and are not applied at the same stage in the process of making steel, are, by virtue of the similitude clause in section 7, Tariff Act July 24, 1897, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693], dutiable at the rate applicable to ferro-manganese under paragraph 122 of said act, Schedule C, § 1, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636].

2. SAME—METALS UNWROUGHT.

In construing the provision in paragraph 183, Tariff Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 166 [U. S. Comp. St. 1901, p. 1645], for "metals unwrought," held, that "unwrought" implies a metal which is capable of being wrought, and not a substance fit only to be used with other ingredients to produce an entirely different and distinct product, and that ferro-chrome, ferro-molybdenum, ferro-tungsten, and ferro-vanadium, used only in imparting certain qualities to steel, and incapable of being themselves wrought into any useful article, are not within said provision.

3. SAME—SIMILITUDE.

The provision in section 7, Tariff Act July 24, 1897, c. 11, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693], that articles not enumerated shall pay the same rate that is applicable to the enumerated article which they most resemble, does not require identity. It is enough if there be a substantial similitude in any of the particulars mentioned in the statute.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Customs Duties, § 148.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decision of the Circuit Court for the Southern District of New York, affirming a decision of the Board of General Appraisers, which overruled the action of the Collector in assessing the imported merchandise as metal unwrought, under paragraph 183 of the act of July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 166 [U. S. Comp. St. 1901, p. 1645], which is as follows: "Metallic mineral substances in a crude state, and metals unwrought, not specially provided for in this act, twenty per centum ad valorem." The importer protested, insisting that the merchandise, which consisted of ferro-chrome, ferro-tungsten, ferro-molybdenum and ferro-vanadium, should have been assessed directly, or by similitude to ferro-manganese, under the provisions of paragraph 122 of the act, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636], which is as follows: "Iron in pigs, iron kentledge, spiegeleisen, ferro-manganese, ferro-silicon; wrought and cast scrap iron, and scrap steel, four dollars per ton; but nothing shall be deemed scrap iron or scrap steel except waste or refuse iron or steel fit only to be remanufactured." Section 7 of the act, 30 Stat. 205 [U. S. Comp. St. 1901, p. 1693] (the similitude clause), so far as applicable to the present controversy, is as follows: "That each and every imported article, not enumerated in this act, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *" The protest also contains an

alternative provision for assessment of duty under section 6 of the act, which is as follows: "That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this act, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem." The decision of the Circuit Court will be found reported in 131 Fed. 576.

Charles D. Baker, Asst. U. S. Atty., and Charles Fuller, Special Asst. U. S. Atty.

Frederick W. Brooks, for appellee.

Before WALLACE and COXE, Circuit Judges.

COXE, Circuit Judge.   There is practically no dispute as to the nature and method of production of the merchandise in question. All of the four "ferros" are mixtures of iron and chromium, tungsten, molybdenum and vanadium, respectively, obtained by direct smelting in an electric furnace.

The proper classification of ferro-chrome for tariff purposes has been several times passed upon by the courts and as it is conceded that all of the ferros here in controversy are, in essential particulars, alike it will simplify the discussion if it be confined to ferro-chrome alone.   We understand this to be the view of counsel for the appellant, for they say of the other ferros: "Their status will in this instance rest on that of ferro-chrome." And, again: "If similitude be found in the case of ferro-chrome, similitude must of necessity also be found in the other substances involved."

Ferro-chrome is produced, in its most advantageous form, by reducing chrome iron ore with carbon in an electrical furnace; it contains iron, chromium and carbon.   One of its principal uses is in the manufacture of armor-piercing projectiles and armor plates. It is also used generally to impart hardness and toughness to steel structures and implements where these qualities are particularly needed, such as burglar-proof safes, crushers, cutting tools and the like.   Its principal use is as an alloy for steel.   It cannot be hammered or rolled or worked into any commercial article, and this is true of all of the ferros in controversy.

Ferro-manganese, like all the others, is produced by smelting the ore containing iron and manganese; it is added to the steel in the process of manufacture.   It is used in making steel for the cheaper class of projectiles and for other purposes where hardness, strength and ductility are necessary.

This, for the present, is a sufficient description of the two materials which are brought into comparison.

There is no conflict here between the ordinary and commercial meaning of tariff nomenclature.   No testimony, certainly no competent testimony, has been given tending to prove a commercial or trade meaning of the words in controversy.

It is admitted on all hands that ferro-chrome is not, eo nomine, enumerated in the tariff act of 1897.   If, therefore, it be not covered by the general language of paragraph 183 as a "metal unwrought" it becomes a nonenumerated article subject to the provisions of the similitude clause.

A decision that ferro-chrome is not a metal unwrought does not necessarily involve a decision that it is a manufactured article; it is enough if the collector's classification be erroneous. The ordinary meaning of "wrought" is worked up, elaborated, worked into shape, labored, manufactured, not rough or crude. "Unwrought" imparts the reverse of these conditions. When one speaks of an unwrought material he means one which has not been worked into shape, one which is unlabored, unelaborated, rough and crude. But the word also implies a material which is capable of being transformed from its crude material to an improved condition, produced by the labor to which it may be subjected. To be more specific, "unwrought metal" implies a metal which is capable of being wrought and not a substance which is only fit to be thrown into the crucible to be melted up with other ingredients to produce an entirely different and distinct product.

The principal expert witness for the appellant, Dr. Waldo, testifies:

"I do not recall any case where ferro-chrome is used alone in metallurgy. Of course it is used as a mordant and that sort of thing outside."

Another witness called by appellant says:

"I have never known ferro-chrome to be wrought or manufactured. I have never wrought or manufactured nor has my company ever wrought or manufactured ferro-chrome. I have never known ferro-chrome, by itself, to be made into anything for practical use and this applies equally to all of the ferros."

But it is said, if the term "metals unwrought" does not cover the merchandise in controversy to what does it apply? We do not feel called upon to answer this question, especially as the record contains very little data upon which to base a correct conclusion. Perhaps, however, an answer may be suggested and our meaning made clearer by reference to an illustration used by Dr. Waldo. He says:

"The metal aluminum in its pig form is an example of an unwrought metal, which has passed through a complicated preparation of ore refining, solution, melting by electrical heat and electrolysis itself. It has not been found in nature as pure metal; yet if at some depth within the earth's crust it should be found pure and ready to be only remelted into pigs, the result would not differ from the pigs we now use."

Having had occasion recently to examine the complicated process by which aluminum is produced (Electric Smelting & R. Co. v. Pittsburg Reduction Co., 125 Fed. 926, 934, 60 C. C. A. 636) we are inclined to think that no better example of unwrought metal can be given. And this unwrought aluminum is capable of being wrought into innumerable articles both useful and ornamental. In this particular the controversy is sui generis and we do not feel justified in deciding upon the present record that a metallic substance which is only used in imparting certain qualities to steel and which is incapable of being wrought into any useful article is a "metal unwrought."

We, therefore, find that the ferros in question are unenumerated articles and subject to the operation of the similitude clause.

The question remains, is ferro-chrome similar to ferro-manganese? This question has been passed upon by this court in U. S. v. Dana, 99 Fed. 433, 39 C. C. A. 590, and what is there said is applicable to the present case. The counsel for appellant have taken pains to point out numerous instances wherein the two articles differ, but it must be borne in mind that the statute does not require identity; if that were necessary the statute would have no raison d' être. It is enough if there be a substantial similitude in any one of the particulars mentioned—material, quality, texture or use. Arthur v. Fox, 108 U. S. 125, 2 Sup. Ct. 371, 27 L. Ed. 675.

Ferro-chrome and ferro-manganese look alike; even the experts are unable to tell them apart, and they are similar in quality and in use, notwithstanding the fact that they produce different results and are not applied at the same stage of the process of making steel. We agree with the expert for the appellee when he says:

"The steel that is made by the use of these other ferros is along the same lines as the steel produced by the use of ferro-manganese. There are differences, but the qualities imparted are of the same general family."

The decision of the Circuit Court is affirmed.