BEFORE THE SECOND DIVISION, JUNE 22, 1964

No. 68672.—Frank P. Dow Co., Inc., and Paradise Mfg. Co. *v.* United States, protests 62/9355 and 62/9138 (Los Angeles).

RAO, Judge: The two cases here involved, which have been consolidated for purposes of trial, are concerned with the proper dutiable classification of certain imported vinyl mattress covers. The collector of customs at Los Angeles assessed duty on this merchandise at the rate of 20 per centum ad valorem as manufactures of cotton, not specially provided for, in paragraph 923 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs

and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, by virtue of the similitude provisions of paragraph 1559 of said act, as amended by the Customs Simplification Act of 1954.

The sole claim herein relied upon is that said plastic mattress covers are dutiable at the rate of 12½ per centum ad valorem, by similitude to manufactures of gutta-percha and/or india rubber, in paragraph 1537(b) of said act, as modified by said Japanese protocol, as supplemented, *supra*, by virtue of said paragraph 1559, as amended.

The tariff provisions hereinabove cited, insofar as applicable to this action, read as follows:

Paragraph 923, as modified, *supra:*

All manufactures, wholly or in chief value of cotton, not specially provided for:

   *     *     *     *     *     *     *

   Other (except * * *) _____ 20% ad val.

Paragraph 1537(b), as modified, *supra:*

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for (except * * *):

   *     *     *     *     *     *     *

   Other_____ 12½% ad val.

Paragraph 1559, as amended, *supra:*

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Recent pronouncements of this and our appellate tribunal concerning the amended provision for the classification of merchandise by similitude have reiterated the rule that similitude in respect of use contemplates a substantial resemblance both in the results and in the methods by which a given use is achieved. *Ignaz Strauss & Co., Inc., et al.* v. *United States*, 45 Cust. Ct. 161, C.D. 2218; *United States* v. *Wecolite Co.*, 45 CCPA 54, C.A.D. 672; *S. S. Kresge Co. et al.* v. *United States*, 46 CCPA 100, C.A.D. 707. As stated in the *Wecolite* case:

It is clear from the reliance of the court on the foregoing cases [*United States* v. *Roessler*, 137 Fed. 770; *Pickhardt* v. *Merritt*, 132 U.S. 252; *Murphy* v. *Arnson*, 96 U.S. 131] that "mode of opration" was a critical factor in determining similitude in use. Aside from other requirements which may exist, only if they are "used substantially in the same manner" is there a similitude in use.

That this is the law is hardly to be disputed. Thus, in *United States* v. *Godillot & Co.*, 3 Ct. Cust. Appls. 128, T.D. 32382, it was stated that:

* * * To constitute similitude of use the results of the use must be substantially the same *and achieved substantially in the same way. Pickhardt* v. *Merritt* (132 U.S. 252, 258). It seems to us that there is no more reason for saying that a night light is similar to the modern taper or to the taper candle than there is for saying that a modern candle is similar to a match or that the candle itself is similar to a kerosene lamp. Tapers, matches, candles, taper candles, kerosene lamps, and electric bulbs all furnish light, some for brief, some for longer periods; but that fact, standing by itself, can hardly be said to rank them as articles of similar use. [Italics as added.]

Expressed in terms of the instant case, the collector's decision, which is presumptively correct, and is predicated upon the presumed findings of all facts

necessary to support his action, presupposes that the plastic mattress covers in issue are similar in use to cotton mattress covers. *United States* v. *Loffredo Bros., Gehrig, Hoban & Co., Inc.*, 46 CCPA 63, C.A.D. 697; *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715; *United States* v. *Marshall Field & Co.*, 17 CCPA 1, T.D. 43390. That is to say, the collector's classification of this merchandise as manufactures wholly or in chief value of cotton assumes that both the way in which these plastic mattress covers are used, and the results achieved thereby, more nearly resemble cotton mattress covers in those particulars, than any other article.

In invoking the provisions of paragraph 1537(b), as modified, *supra*, by virtue of similitude, plaintiffs are here contending that the subject plastic mattress covers more closely resemble an article of rubber, and/or gutta-percha, in both method and result of use. The item relied upon, according to the record as herein developed, is a rubber sheet.

The burden rested with the plaintiffs to establish, by a fair preponderance of the evidence, not only that the collector's finding of similitude to manufactures of cotton was erroneous, but that their claim of similitude to articles of rubber was correct. *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325.

Despite the fact that the only evidence in the case consists of the testimony of one witness for plaintiffs, in addition to a representative sample of the imported merchandise, introduced as plaintiffs' exhibit 1, we are of opinion that plaintiffs have failed to discharge the burden which they have herein assumed.

The witness was one Leslie Bronte, a salesman for plaintiff Paradise Manufacturing Co., which company imports and manufactures vinyl products and sells such merchandise in the 11 western states. He first became affiliated with the company in 1955, but, after about a year, left to go with a firm which manufactured and sold juvenile bedding items, principally mattress pads and pillows. He remained with that company for about 5 years, doing purchasing, some product design, and a small amount of selling. He returned to plaintiff company in 1961.

Mr. Bronte stated that he has been familiar with merchandise like plaintiffs' exhibit 1 for about 11 years. It is, he said, a plastic mattress cover used to protect a mattress from moisture or dust or mildew. He described a cotton mattress *pad* as a unit for absorption and cushioning, having a different use than plaintiffs' exhibit 1, which does not have those properties. He was of opinion that one could not comfortably lie directly on an article like plaintiffs' exhibit 1, because its lack of porousness would tend to cause perspiration.

This witness testified that he has seen articles like exhibit 1 used on a bed. It is slipped over a mattress, covered by a cotton mattress pad, and then by a sheet. He had never seen exhibit 1 used in lieu of any item, but, before such articles came on the market, he had seen rubber sheeting used for the same purpose of preventing moisture from entering the mattress.

On cross-examination, Mr. Bronte stated that the bedding company for which he worked did not sell mattress covers. However, he expressed familiarity with that item which he described as a "unit much the same size as a mattress that is shaped over the mattress, and the chief product is cotton." In his opinion, a cotton mattress cover would be used more often with an adult-size bed than with a child's bed, and, while he refused to admit that a twin bed was generally considered to be an adult-size bed, he described exhibit 1 as a unit for a twin bed.

Mr. Bronte further testified that he had seen rubber sheeting used in hospital beds, and on juvenile beds, its purpose in the latter connection especially being to protect the mattress from moisture from the tot who slept in the bed. He did not consider plaintiffs' exhibit 1 to be a juvenile bedding item, since it is

basically marketed in linen domestic shops in retail outlets which do not carry juvenile bedding, and it is designed to fit a standard twin-size mattress 39 by 76 inches. The juvenile bed to which he was referring was, in fact, a crib size, 28 by 54 inches. A youth bed would be 33 by 66 inches, and a full-size bed, for which his company also imports vinyl mattress covers, is 54 by 76 inches. Mr. Bronte reiterated that a plastic mattress cover, or a mattress renovator, as it is referred to when indicating a crib-mattress cover, is waterproof, and would not be a very comfortable item on which to sleep.

It would seem from the foregoing that, insofar as the proof in this case is concerned, substantial similarity of use between plastic mattress covers and rubber sheeting has not been effectively established. All that was here proven is that plastic mattress covers are ordinarily employed in the household for the protection of mattresses from moisture, dust, and mildew. In the size here involved, they are used for covering mattresses of twin beds. Rubber sheeting, on the other hand, to the extent that the witness may be said to be familiar with its use, since the scope of his knowledge was not brought out, is an item for use on hospital beds, and infant cribs, where its resistance to water penetration is obviously its significant characteristic. While plastic mattress covers are also waterproof, it is not here shown that when designed to fit the mattresses of standard twin beds their imperviousness to water penetration is their chief attraction. Nor is there any suggestion that hospitals might find the instant items useful substitutes for rubber sheeting. And while the witness testified, and the exhibit indicates, that a mattress cover encases a mattress, there is no evidence that rubber sheeting is similarly employed.

We are loath to disturb the collector's classification of the subject merchandise upon so meager a record as that before us in this case. Not only was there a failure to establish the extent of the witness' observations of the use of the item which plaintiffs claim to be similar, but similitude to cotton mattress covers seems not to have been expressly negatived.

By reason of the foregoing, we find the contention that the subject vinyl mattress covers are dutiable by similitude to articles of rubber or gutta-percha to be without merit. All claims in the protests are, therefore, overruled.

Judgment will be entered accordingly.