Moreover, as stated in said *National Starch* case, *supra*—

Unless there is substantial evidence in the record to establish the propriety of the protestant's asserted classification of the imported merchandise, the protest must be overruled and it is unnecessary to consider whether or not the collector's classification is wrong. *United States* v. *H. V. Albercht, etc.*, 27 CCPA 112, 117, C.A.D. 71; *W. T. Grant Co.* v. *United States*, 38 CCPA 57, 65, C.A.D. 440; *United States* v. *Cody Manufacturing Co., Inc., et al.*, 44 CCPA 67, 74, C.A.D. 639; *Davies et al.* v. *Miller et al.*, 91 F. 647.

After due consideration of the record here presented, the court is of the opinion that plaintiff has failed to sustain the burden placed upon it not only of proving that the classification of the contested merchandise by the customs authorities was erroneous but that its classification claim is correct. In the circumstances, therefore, we have no other course but to overrule all claims in the protest.

Judgment will issue accordingly.

(C.D. 3102)

## The Garcia Corp. *v.* United States

United States Customs Court, Second Division

(Decided August 30, 1967)

*Siegel, Mandell & Davidson (Allan H. Kamnitz, David Serko,* and *Murray Sklaroff* of counsel) for the plaintiff.
*Carl Eardley,* Acting Assistant Attorney General (*Arthur H. Steinberg,* trial attorney), for the defendant.

Before Rao and Ford, Judges

Ford, Judge: The merchandise involved in this protest, nylon monofilament fishing line, was classified under the provision for manu-

factures of silk in paragraph 1211 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, by virtue of the similitude provisions of paragraph 1559 of that act, as amended by the Customs Simplification Act of 1954, T.D. 53599 (19 U.S.C. § 1001, par. 1559).

Plaintiff claims the merchandise is not classifiable by similitude and is dutiable as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739.

The involved tariff paragraphs are as follows:

Paragraph 1211, Tariff Act of 1930, as modified, *supra*—

All manufactures, wholly or in chief value of silk, not
specially provided for_____ 29% ad val.

Paragraph 1559, Tariff Act of 1930, as amended, *supra*—

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 1558, Tariff Act of 1930, as modified, *supra*—

Articles manufactured, in whole or in part, not specially
provided for (except * * *)_____ 10% ad val.

Plaintiff abandoned its protest with respect to the merchandise entered as 4-pound test line. The parties stipulated that the 6-pound and 8-pound test Playtl nylon monofilament fishing line was similar in all material respects to the merchandise involved in *The Garcia Corp.* v. *United States*, 54 Cust. Ct. 420, Abstract 69278, rehearing denied, 55 Cust. Ct. 384, Abstract 69423. The record in that case was, upon plaintiff's motion without objection, incorporated herein.

The nylon monofilament fishing line involved in the *Garcia* case, *supra*, and held in that decision to be properly classifiable by similitude to silk, was entered for consumption after the amendment of paragraph 1313 of the Tariff Act of 1930 by Public Law 85–645, 72 Stat. 602 (19 U.S.C. § 1001, par. 1313), T.D. 54676, while the instant protest covers merchandise which was entered for consumption on June 17, 1958, prior to the effective date, September 14, 1958, of the amendment of paragraph 1313.

The provisions of paragraph 1313, as amended, read as follows:

(a) As used in this title, the term "rayon or other synthetic textile", means any fiber, filament, or fibrous structure, and any band or strip (suitable for the manufacture of textiles) not over one inch in width, all the foregoing whether formed by extrusion or by other processes from substances derived by man from cellulosic or noncellulosic materials by chemical processes such as, but not limited to, polymerization and condensation, but the term does not include fibers, filaments, fibrous structures, or bands and strips of glass or other nonmetallic mineral, or of metal, paper, or natural rubber.

(b) Notwithstanding the provisions of subsection (a) of this section, nothing in this section shall change the existing customs classification of nylon monofilament fishing line, nylon surgical sutures, nylon tennis racket strings or nylon brush bristles.

The *Garcia* decision was based upon the specific exception for nylon monofilament fishing line contained in section (b) of paragraph 1313, as amended, *supra*, as well as the decisions in *J.M.P.R. Trading Corp., Alltransport, Inc.* v. *United States*, 43 CCPA 1, C.A.D. 600, and *J.M.P.R. Trading Corp., Alltransport, Inc.* v. *United States*, 33 Cust. Ct. 226, C.D. 1658.

Plaintiff contends the *Garcia* decision is not controlling here, for the nylon monofilament fishing line involved in this protest, while the same as that involved in *Garcia*, was entered prior to the effective date of the amendment to paragraph 1313.

The effect of the amendment of paragraph 1313 upon the classification of nylon monofilament fishing line, as we view it and as stated by the court in the *Garcia* decision, is that—

In view of section (a) of paragraph 1313, as amended, *supra*, it is apparent that the imported Platyl monofilament fishing line would be subject to classification under schedule 13 of said act if it were not for section (b) of said paragraph, as amended, *supra*. Since section (b) excepts, among other things, nylon monofilament fishing line, classification under schedule 13 would be improper. * * *

In other words, *Garcia* decided that the classification of nylon monofilament, by similitude, as manufactures of silk was not affected by the amendment of paragraph 1313 one way or the other; that is, the amended paragraph 1313, which in section (a) redefined the phrase "rayon or other synthetic textile," made clear, in section (b), that section (a) would not change the existing customs classification of nylon monofilament fishing line. However, the amendment did not mandate the classification of nylon monofilament fishing line as manufactures of silk by similitude.

Therefore, having determined that the amendment did not affect the classification of nylon monofilament fishing lines, the court, in *Garcia*,

obviously then had to determine whether the classification of nylon monofilament fishing lines presented in that case was controlled by the decisions in the *J.M.P.R. Trading Corp. case*. That determination was made and manifested by the statement in the decision that the court was following the cited cases in holding the collector's classification to be correct.

Inasmuch as the merchandise here involved is identical with that in *Garcia*, and the issues in both cases are the same—indeed, plaintiff's instant brief virtually is a verbatim copy of the brief in *Garcia*—we deem the subject protests to be controlled by the *Garcia* decision; that is, the nylon monofilament fishing lines are, following the *J.M.P.R.* case, classifiable by similitude as manufactures of silk.

It would not be inapposite, however, to expound in greater detail the rationale of the *Garcia* decision which we reaffirm here.

Plaintiff's contentions are based upon a two-pronged argument. Alleging that, at the time of importation of the subject merchandise, silk fishing line did not exist in any commercial sense, plaintiff argues for the inapplicability of the similitude clause where there is no enumerated article in existence at the time of importation to which the non-enumerated article may be held to be similar. Secondly, plaintiff argues that any silk fishing line which may have been in existence at the time of importation was used for methods of fishing different from spin fishing or spinning for which nylon monofilament line was used.

With respect to the first argument, we need cite only the decisions in *United States* v. *Steinberg Bros.*, 41 Cust. Ct. 128, C.D. 2030; affirmed 47 CCPA 47, C.A.D. 727. There knit nylon fabric was held to be classifiable, by similitude, as knit silk fabric. The record established that knitted silk fabric which had been used for the manufacture of lingerie and gloves, was at the time of importation no longer used for such purposes and, in fact, was not being produced or manufactured. The knitted fabrics used in the manufacture of lingerie and gloves were at the time of importation made of rayon or nylon. *A fortiori*, if knitted silk fabric was completely replaced by rayon or nylon knitted fabrics at the time of importation, it did not, to use plaintiff's term, have a commercial existence to any greater degree than did silk fishing line at the time of importation.

With respect to plaintiff's remaining argument, the record shows there are various methods of fishing, such as bait casting, fly casting, trolling, salt water fishing, and spinning. Also there are various types of fishing lines, including silk, dacron, and nylon which is either braided or monofilament. Although silk has been and, defendant alleges, can be used for the various methods of fishing, it apparently is inferior to nylon which also is used for the various methods.

The crux of the dispute concerns spin fishing or spinning. Plaintiff contends and submits evidence to the effect that nylon monofilament fishing line is used in spinning or spin fishing and for no other purpose, while silk fishing line, even if it were in existence, was used in other methods of fishing. Defendant disputes this contention and submits evidence to show that silk line can be used in spinning or spin fishing, and that nylon monofilament is used in several methods of fishing.

The collector's decision, which is presumptively correct, and is predicated upon the presumed findings of all facts necessary to support his action, presupposes that nylon monofilament fishing line is similar, in the use to which it may be applied, to silk fishing line. See, *United States* v. *Loffredo Bros., Gehrig, Hoban & Co., Inc.*, 46 CCPA 63, C.A.D. 697; *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715; *Frank P. Dow Co., Inc., and Paradise Mfg. Co.* v. *United States*, 53 Cust. Ct. 226, Abstract 68672.

Therefore, plaintiff's initial burden is to negative such presumed similarity. *Hostachem Corporation* v. *United States*, 51 Cust. Ct. 272, Abstract 68139. More specifically, plaintiff must establish that nylon monofilament line is not similar in the use to which it may be applied to silk fishing line.

We deem irrelevant so much of plaintiff's evidence as was intended to show that silk fishing line cannot be substituted for nylon monofilament line in spinning or spin fishing. For, insofar as capability of substitution is a consideration for classification under the similitude provision, the pertinent inquiry is whether the imported article, *i.e.*, the nylon monofilament line, is capable of being substituted for silk fishing line, and not vice versa. *Jomac-North, Inc.* v. *United States*, 48 Cust. Ct. 119, C.D. 2321.

In the *J.M.P.R.* decision, the appellate court posed the relevant issue as follows:

\* \* \* Assuming, without so deciding, that two lines may be used in fishing in such dissimilar manners as to avoid the similitude of use provision of paragraph 1559, it remains to be considered whether such divergence of use has been shown in the present case between silk and monofilament nylon.

In deciding that issue, the court found that while the properties of monofilament nylon line adapted it primarily for spinning, for which method of fishing it was principally used, such use was not exclusive. The court also found that monofilament nylon lines, as well as silk lines, could be used for other common types of fishing.

We have examined closely the record presented here and it seems clear that nylon monofilament line possesses features which make it preferable, if not superior, to silk fishing line. Also, it may be that the nylon line can be used in one method of fishing in addition to the several methods in which both silk and nylon may be employed.

However, the record is inadequate to establish that the nylon line may not be used for the methods of fishing in which silk line was or is used. Therefore, by failing to negative such similarity in use, plaintiff has not overcome the presumption of correctness of the collector's classification.

We have assumed, for purposes of reviewing the evidence presented to rebut the presumption of correctness attaching to the collector's action, that two types of fishing line may be so dissimilar in use as to avoid being considered similar for purposes of the similitude provision. However, although not necessary to our disposition of the instant protest, we find that the validity of such assumption has not satisfactorily been shown by plaintiff.

Nylon monofilament line clearly is a species within the genus of fishing lines; that is, it is "a line used in fishing." Webster's Third International Dictionary, 1966. The same lexicographic authority defines "monofilament" as:

A single untwisted synthetic filament (as of nylon) made in varying diameters for use in * * * fishing lines * * *.

To succeed, therefore, plaintiff must show, as it attempts so to do, that while nylon monofilament fishing line is a fishing line, it is not within the tariff enumeration for fishing line. We are aware, of course, that fishing lines are not in *haec verba* enumerated in the tariff paragraphs. However, it is well established that "in the consideration of the similitude clause an article is considered enumerated if it comes within a class made dutiable in general terms by the act, quite as certainly as if the article is made dutiable under an eo nomine designation." *S.S. Kresge Co. et al.* v. *United States*, 46 CCPA 100, C.A.D. 707; *United States* v. *Wecolite Co.*, 45 CCPA 54, C.A.D. 672; *United States* v. *Cochran & Co.*, *United States* v. *Rosenblum*, 3 Ct. Cust. Appls. 57, T.D. 32349.

Enumeration, in this sense, of fishing line within the general class of manufactures of silk was established in *Okuda & Shibagaki (Inc.) et al.* v. *United States*, 21 CCPA 100, T.D. 46411, quite as certainly as if the article, *i.e.*, fishing line, is made dutiable under an *eo nomine* designation. See *S. S. Kresge Co. et al.* v. *United States*, *supra*. The Court of Customs and Patent Appeals in the *J.M.P.R.* case, *supra*, affirmed this court's decision, which held nylon monofilament fishing line dutiable by similitude to manufactures of silk following the *Okuda* case, *supra*.

Inasmuch as fishing lines, following the *S. S. Kresge Co.* decision, are enumerated under manufactures of silk by virtue of the similitude provision as certainly as if they were designated *eo nomine*, and since an *eo nomine* designation includes all forms of such article, *C. J. Tower & Sons* v. *United States*, 47 CCPA 85, C.A.D. 734, we hold the subject

nylon monofilament fishing lines, indisputably a form of fishing line, to be subject to classification, following the *J.M.P.R.* decisions, as classified by the collector.

We, therefore, for the reasons set forth above, overrule the protest and direct that judgment be entered accordingly.