IGNAZ STRAUSS & COMPANY, INC. *v.* UNITED STATES (No. 5245)*
UNITED STATES *v.* IGNAZ STRAUSS & COMPANY, INC. (No. 5246)

United States Court of Customs and Patent Appeals, June 8, 1967**

*John D. Rode, Ellsworth Qualey* for Ignaz Strauss & Company, Inc.
*J. William Doolittle*, Acting Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Arthur H. Steinberg* for the United States.

[Oral argument February 9, 1967 by Mr. Qualey and Mr. Steinberg]

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK***

SMITH, Judge, delivered the opinion of the court:

Both the government and the importer appeal from the decision of the Customs Court, Second Division, 56 Cust. Ct. 54, C.D. 2611. The importations, certain candlesticks and candelabra, were classified under par. 397, Tariff Act of 1930, as modified,[1] as articles or wares,

---

*C.A.D. 923.
**Petition for rehearing denied October 5, 1967.
***Senior District Judge, Eastern District of Pennsylvania, sitting by designation.
[1] Paragraph 397 of the Tariff Act of 1930, as modified, 91 Treas. Dec. 150, T.D. 54108, so far as is pertinent, provides as follows:
Articles or wares not specially provided for, whether partly or wholly manufactured:
\* \* \* composed wholly or in chief value of \* \* \* brass \* \* \*____ 19% ad val.

n.s.p.f., composed wholly or in chief value of brass. These importations were claimed under par. 339, Tariff Act of 1930, as modified,[2] as household utensils, n.s.p.f., composed wholly or in chief value of brass.

The issue presented to the court below was whether, in view of the evidence and applicable law, the various importations were more properly classified as articles or as household utensils. As to certain importations the Customs Court sustained the protest and the government appealed. As to other importations the court overruled the protest and the importer appealed. We are required to review the correctness of these determinations. For the reasons hereinafter set forth, we find that the Custom Court should have sustained the protest as to all of the importations.

As to the importations concerning which the court below sustained the protest, its opinion states:

Exhibits 3, 5, and 6 are established on the record as made to be used with lit candles for religious purposes, primarily by Jewish persons throughout the United States, on Friday nights or Jewish holy days. Their function is not as illuminants, but for the purpose of celebrating the Sabbath or other Jewish holy days. The candles are permitted to burn until they are burned out, after which they are put away out of site [sic] until again used for the same purpose. The use of the lit candle is part and parcel of the celebration for religious purposes on a Jewish holy day. They are concededly composed wholly of brass. * * *

\*　　　\*　　　\*　　　\*　　　\*　·　　\*　　　\*

* * * while the brass articles were primarily used with lit candles on Friday nights or on holy day occasions by persons of the Jewish faith, their use was for religious purposes, and not for either decoration, ornamentation, or for illumination purposes. The use, in our opinion, is utilitarian.

Giving full force and weight to the record with respect to exhibits 3, 5, and 6 here in evidence, we conclude that it establishes a *prima facie* case overcoming the presumption of correctness of the collector's classification. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, 221, T.D. 45995; *United States* v. *Bruce Duncan Co., Inc., a/c Kasuga Sales, Ltd., National Silver Company*, 50 CCPA 43, 46, C.A.D. 817.

On the record and for the reasons stated herein, we hold that the imported articles, represented by exhibits 3, 5, and 6, are household utensils. * * *

As to the importations concerning which the protest was overruled, the court stated:

A careful scrutiny of the evidence discloses no specific testimony as to the use of exhibits 1 and 4. Those exhibits are included in the general, broad sweeping questions and answers relating to "exhibits 1 to 6." There is insufficient evidence concerning exhibits 1 and 4 to warrant a conclusion that the importer

---

[2] Paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol, *supra*, so far as is pertinent, provides as follows:

Table, household, kitchen, and hospital utensils * * * not specially provided for * * *:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Not plated with platinum, gold or silver, and not specially provided for, composed wholly or in chief value of—

Brass_____ 12½% ad val.

has established, as to them, that the presumptively correct classification is erroneous, and that importer has established its claims in respect thereto. * * *

Exhibit 2 is shown by the record to be used for illumination purposes by candlelight, in the event of a storm or other cause, when usual lighting facilities are extinguished. * * *

 We have often stated, samples are potent witnesses. From our inspection of the exhibits we are unable to discern any meaningful visual distinction between the various importations.[3] The correctness of the Customs Court's distinction appears to rest upon the testimony presented as to the various exhibits. In this respect we think the court below viewed the testimony too strictly.

The evidence of record consists of the six exhibits and the testimony of two witnesses called by the importer. One witness testified:

Q. To get back to Exhibits 1 to 6, have you personally observed the use of such items? A. I have.

Q. Many times or few times? A. Many times.

Q. Practically during your entire business career? A. My entire business career and also before that.

Q. Have you seen or observed the use of such articles in different places throughout the United States or just one area? A. I have seen them all over the United States.

Q. Have you ever used items like Exhibits 1 to 6 yourself? A. We use them in our home.

Q. Many times? A. For our whole married life. That's many times.

Q. Would you please state in what type of place or location you have seen items like Exhibits 1 to 6 used, by that I mean are they in stores or homes or restaurants, or where have you seen them used? A. Mostly I have seen them used at homes.

Q. Would you say that you had principally seen them used in homes? A. Well, I would say principally, yes.

Q. Now, I think you said that was in various parts of the country? A. Well, all over the whole country.

Q. Was the use which you observed of Exhibits 1 to 6 the same regardless of the locality in which you saw them being used? A. They were the same all over the country.

Q. When you saw them being used were they being used to hold anything? A. They hold candles.

Q. And when you saw Exhibits 1 to 6 being used did you ever see them used without a candle? A. No.

Q. When they were not being used do you know what was done with them or where they were placed or put? A. They usually put it in a cupboard or a closet of some sort.

---

[3] Exhibits 1 and 2 are nearly identical. They are candle holders having a saucer-type base, a center hub for holding the candle, and a loop connected with the base whereby a finger may be inserted in the loop to facilitate moving the candle holder.

Exhibits 3 and 4 are nearly identical. They are candle holders having a flat base, a stem portion and a hub-like portion for holding the candle. Exhibits 1–4 are plain in design and appearance.

Exhibits 5 and 6 are substantially the same. They are candle holders having a flat base, a main stem portion, multiple branch stems extending therefrom, and hub-like portions for holding the candles. Exhibit 5 holds 5 candles and exhibit 6 holds 7 candles.

Q. Would you say that the only use of articles like Exhibits 1 to 6 that you saw was that of holding a candle? A. I have always seen them with a candle in them.

Q. Now, have you had occasion to observe the use of articles like Exhibits 1 to 6 when they were holding a candle? A. I have seen them.

Q. Would you please describe what you saw or observed, if necessary referring to the exhibits separately if they were used differently? Take Exhibit 2, for instance, Mr. Lemkin. What is your experience as to the use of that item? A. I have seen this mostly up in New England and the eastern part of this country used with a candle for lighting purposes in many homes. In other words, I mean by lighting purposes when they were using it to go from room to room sometimes with a lighted candle in it.

The second witness testified:

Q. Have you ever seen items like Exhibits 1 to 6 used? A. I have.

Q. Many times? A. Quite a few.

Q. Has that been just in New York City or in various places? A. It would be in many places.

Q. Throughout the United States, I am talking about now. A. Yes; in the United States as well.

Q. And have you ever used items like Exhibits 1 to 6 yourself? A. Yes; we have.

Q. Based upon what you have observed and what you have done yourself would you state how Exhibits 1 to 6 are used in your experience? A. Well, my own experience, we have a cottage in New Hampshire. This is the one that I would have most—

Q. Exhibit 2 is that? A. Yes. We use that as an emergency light in case of power failure due to storms, or one thing or another. This is always kept in the cottage with a candle to be used for lighting purposes.

Q. As far as you know is that the way others have used it, or have you seen others use it? A. Well, I have seen others using it actually lit. I have also seen this. I think this is referred to as a minorah. Although the one that I am familiar with has—

Judge Ford: Exhibit 5?

The Witness: Exhibit 5.

A. My Jewish friends use it. I know that this is used, too, but the one I am most familiar with is the seven-branch, which is usually displayed in a window or on a dining table visible with candles burning in it.

Q. Would you say that candlesticks such as Exhibits 1 to 6 were used to hold candles? A. Yes.

 * * * * * * *

Q. Within your experience with Exhibits—merchandise like Exhibits 1 to 6, would you say that they are used mostly for some function other than ornamental purposes? A. I would be inclined to say that in our experience when we sell a candelabra of this type, which is in our classification rather inexpensive, we are asked for the candles or at least an assurance that an American-made candle can be fitted into them. If we have no standard American size candle in most cases they will not buy them unless we furnish a special size candle for them.

Q. Would you say that the uses that you have observed of Exhibits 1 to 6 were principally in the household or homes? A. Yes; I would say so.

Considering the above testimony *in view of the exhibits* we think it supports the conclusion that all the importations before us are household utensils.

The government's brief states:

* * * it is submitted that a Jewish person utilizing Exhibits 3, 5, and 6 in his home on a Friday night or holy day is not thereby achieving "utilitarian objectives" in the sense that he would be if he were using the articles for illumination. It is submitted that since the *primary* use of the articles is religious or symbolic, any utilitarian use involved in merely holding candles is incidental. * * * Appellant submits that unless the *primary* use of a candlestick or candelabra is for lighting or illumination, it is not classifiable under paragraph 339, and the lower court erred in finding that the use of Exhibits 3, 5, and 6 is "utilitarian."

As we view the government's arguments, the importer succeeds if the importations are primarily used for lighting and not decoration. We are satisfied from examining the exhibits and considering the evidence that the importations are not primarily used for decoration. See *S.S. Sarna, Inc.* v. *United States*, 44 Cust. Ct. 444, Abs. 64135 (1960).

Accordingly, the judgment of the Customs Court in appeal 5246 involving exhibits 3, 5, and 6 is *affirmed* and in appeal 5245 involving exhibits 1, 2, and 4 is *reversed*.

WORLEY, C.J., concurs in the result.